UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE ESTATE OF DEBRA DAVIS,<br>by OLGA DAVIS, in her capacity as Administratrix<br>of the Estate of Debra Davis,<br><br>      Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA, et al.,<br><br>      Defendants. | CIVIL ACTION NO.<br>02-11911-RCL |

MEMORANDUM AND ORDER ON MOTIONS OF DEFENDANTS FITZPATRICK,
MORRIS, AND SARHATT FOR JUDGMENT ON THE PLEADINGS
<u>BASED ON THE STATUTE OF LIMITATIONS</u>

LINDSAY, District Judge.

  This action arises out of the circumstances surrounding the death of Debra Davis ("Davis") in September 1981 allegedly at the hands of Stephen J. Flemmi and James "Whitey" Bulger, who were at the time "top echelon" FBI informants and alleged leaders of the Boston area's Winter Hill Gang, an association engaged in criminal activities. In her amended complaint, Olga Davis (the "plaintiff"), adminstratrix of the Estate of Debra Davis (the "Estate"), claims, *inter alia*, that Robert Fitzpatrick, John M. Morris, Lawrence Sarhatt ("defendants," all of whom were FBI agents at the times relevant to the amended complaint) and others permitted Flemmi and Bulger to commit criminal activities with impunity, including murdering Davis. The plaintiff maintains that this conduct is actionable under the rule stated in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), because it

violated Davis's right under the Fourth Amendment of the United States Constitution to "be secure in her person from unreasonable seizures" and her Fifth Amendment "substantive due process right not to be deprived of life and liberty without due process of law."  Amend. Compl. ¶¶ 270, 274, 280, 300.  The amended complaint also alleges that, after the murder of Davis, the individual defendants engaged in numerous "cover-ups" of crimes committed by Flemmi and Bulger to preserve their status as top echelon informants for the FBI and to conceal the FBI's corrupt relationship with them.  According to the plaintiff, these efforts to enshroud the illegalities of Flemmi and Bulger, and the FBI are also actionable under *Bivens* because they prevented the plaintiff from successfully investigating the disappearance of Davis and bringing claims arising from her death, thus depriving the plaintiff of her right to access to courts, as guaranteed by the First and Fifth Amendments.  The *Bivens* claims against each of the defendant are as follows:

    Count VII:    Fitzpatrick,[1] Morris, and Sarhatt;

    Count VIII:    Fitzpatrick, Morris, and Sarhatt;

    Count IX:    Morris and Sarhatt;

    Count X:    Fitzpatrick, Morris, and Sarhatt; and

    Count XI:    Fitzpatrick, Morris, and Sarhatt.

---

[1]The plaintiff has also asserted *Bivens* claims against John J. Connolly, Jr. and H. Paul Rico, who have moved for judgment on the pleadings on all counts, in part based on the statute of limitations (docket nos. 65 and 63, respectively).  Because these motions address more than one ground for judgment on the pleadings, I will dispose of them in separate orders.  To the extent I rule on their motions based on the statute of limitations defense, this order will dictate the result with respect to that issue.

The defendants have moved under Fed. R. Civ. P. 12(c) ("Rule 12") to dismiss these *Bivens* claims,[2] arguing that the claims are barred by the applicable three-year statute of limitations.[3] For the purpose of these motions, I must treat all well-pleaded facts, and all reasonable inferences therefrom, as true. *United States v. U.S. Currency, $81,000*, 189 F.3d 28, 33 (1st Cir. 1999); *see also Collier v. City of Chicopee*, 158 F.3d 601, 602 (1st Cir. 1998) (noting that motions for judgment on the pleadings under Rule 12(c) warrant the same treatment as motions to dismiss under Fed. R. Civ. P. 12(b)(6)). Judgment on the pleadings is not warranted unless "it appears beyond a doubt that the plaintiff can prove no set of facts in support of [her] claim[s] which would entitle [her] to relief." *U.S. Currency,* 189 F.3d at 33 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

The plaintiff's *Bivens* claims accrued when she "discover[ed], or in the exercise of reasonable diligence should have discovered, the factual basis for the cause of action," *Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002) or, in other words, when the plaintiff

---

[2]Although defendant Fitzpatrick did not file an individual motion for judgment on the pleadings based on the statute of limitations, he joined the Consolidated Memorandum of Law in Support of Individual Defendants' Motions to Dismiss or for Judgment on the Pleadings on Statute of Limitations filed in *McIntyre v. United States*, C.A. No. 01-10408-RCL (D. Mass. July 7, 2003) (docket no. 311) ("Consolidated Memorandum" or "Cons. Mem."). I therefore consider that he has moved here for judgment on the pleadings on the ground that the plaintiff's *Bivens* claims are time barred.

[3]Because Congress has not established a time limitation for *Bivens* actions, the three-year Massachusetts statute of limitations applicable in tort actions for personal injuries, Mass. Gen. Laws ch. 260, § 2A, or civil rights actions, Mass. Gen. Laws ch. 260, § 5B, and any associated state tolling laws will apply, provided they are not inconsistent with federal law or policy. *Wilson v. Garcia*, 471 U.S. 261, 266-67, 276-80 (1985). Since both statutes have a three-year period of limitations, it is unnecessary to decide whether Mass. Gen. Laws ch. 260, § 5B supplants Mass. Gen. Laws ch. 260, § 2A for purposes of federal civil rights actions. *Street v. Vose*, 936 F.2d 38, 39 n.2 (1st Cir. 1991).

discovered the injuries to Davis and to the Estate and the probable causes of those injuries. *Skwira v. United States*, 344 F.3d 64, 76-77 (1st Cir. 2003), *petition for cert. filed*, 72 U.S.L.W. 3539 (U.S. Feb. 11, 2004) (No. 03-1159).[4] While the death of Davis was unquestionably an element of the injuries forming the bases of the plaintiff's *Bivens* claims, the actual injuries in question consisted not of the death by murder itself, but the violation of the *constitutional rights* of Davis and the Estate. *Marrapese*, 749 F.2d at 937 (where state required plaintiff to submit to unsafe medical tests, plaintiff's injury "was not a medical injury flowing from an act of malpractice but rather was an injury to his constitutional rights based upon the officers' forcing him to undergo a benzidine test against his will").[5] Moreover, the "probable cause" of Davis's

---

[4]*Gonzalez* and *Skwira* address the accrual of claims against the United States under the Federal Tort Claim Act, 28 U.S.C. §§ 2671, *et seq.* ("FTCA"), whereas the defendants' motions here implicate the accrual of *Bivens* claims. I may rely, however, on cases addressing the accrual of either type of claim in deciding the present motions. *Marrapese v. Rhode Island*, 749 F.2d 934, 938 n.8 (1st Cir. 1984) (recognizing that although "different considerations may apply in section 1983 actions and in FTCA suits, the problems courts encounter in resolving the accrual question under federal law are basically the same").

[5]*See also Calero-Colon v. Betancourt-Lebron*, 68 F.3d 1, 4-5 (1st Cir. 1995) (Lynch, J., concurring) ("There may be circumstances in which plaintiffs neither knew, nor had reason to know, at the time of their warrantless arrests that they had suffered a constitutional injury and so the statute [of limitations] would not begin to run upon arrest. ... That the common law of false arrest has often been interpreted to establish that the common law cause of action accrues upon the arrest does not answer the question of the accrual date for § 1983 actions.") (citation and footnote omitted), *cited with approval in Nieves v. McSweeney*, 241 F.3d 46, 52 n.4 (1st Cir. 2001); *cf. Licari v. City of Chicago*, 298 F.3d 664, 668 (7th Cir. 2002) ("[Section 1983] claims accrue when the plaintiff knows or should have known that his constitutional rights were violated."); *Beck v. City of Muskogee Police Dept.*, 195 F.3d 553, 557 (10th Cir. 1999) ("Since the injury in a § 1983 case is the violation of a constitutional right, such claims accrue when the plaintiff knows or should know that his or her constitutional rights have been violated." (quoting *Smith v. City of Enid ex rel Enid City Comm'n*, 149 F.3d 1151, 1154 (10th Cir. 1990))); *Williams v. King*, 796 F. Supp. 737, 740 (E.D.N.Y. 1992) ("[A] claim under Section 1983 accrues at the moment when the plaintiff knows or has reason to know of the constitutional injury that is the basis for his action.") (internal quotation marks omitted).

constitutional injuries was not simply the *physical* cause of her death--strangulation--but murder allegedly accomplished with the aid (both passive and active) of certain government actors, the *factual* cause of the injuries.  *See, e.g.*, *Attallah v. United States*, 955 F.2d 776, 780 (1st Cir. 1992).[6]

Nevertheless, in the circumstances of this case, it is undisputable that the plaintiff could not have had notice of the constitutional injuries to Davis and the Estate until the plaintiff[7] had actual or constructive knowledge of Davis's death.  Thus, unless it appears "beyond doubt" that the plaintiff knew or should have known of Davis's death before September 30, 1999, the plaintiff's *Bivens* claims, filed on September 30, 2002, will survive a motion for judgment on the pleadings.  *U.S. Currency*, 189 F.3d at 33.

Based on documents before me, I cannot state with the level of assurance required to order judgment on the pleadings, that the plaintiff knew or should have known that Davis was dead prior to October 2000, when Davis's remains were discovered.  The plaintiff asserts that, before that time, she still entertained at least a slim hope that Davis had gone to Mexico and

---

[6]In *Attallah*, the First Circuit explicitly rejected the government's argument that the plaintiffs' *Bivens* claims arising from the murder of the plaintiffs' courier by United States Customs agents accrued when the plaintiffs learned that the courier had been abducted and killed: "[W]e cannot see how appellants could have known the factual basis for their claim--the robbery and subsequent assassination of their courier *by two Customs agents*."  955 F.2d at 780 (emphasis added).

[7]I impute to the plaintiff the level of knowledge of anyone who might have been named administrator of the Estate with authority to prosecute the *Bivens* claims at relevant times, including other members of Davis's family.  *See Wheeler v. United States,* C.A. No. 02-10464-RCL at 2-3 (D. Mass. March 31, 2003); *Cutting v. United States,* 204 F. Supp. 29, 216, 227, 234 (D. Mass. 2002) (recognizing that the accrual of an estate's cause of action under the discovery rule occurs when any potential estate plaintiff has sufficient information to be on inquiry notice of a claim the estate might have against a defendant), *aff'd by Skwira v. United States*, 344 F. 3d 64 (1st Cir. 2003), *petition for cert. filed*, 72 U.S.L.W. 3539 (U.S. Feb. 11, 2004) (No. 03-1159).

perhaps was still alive. Affidavit of Olga Davis ¶ 15 (attached as Exhibit A to Plaintiff's Memorandum in Opposition to United States' Motion to Dismiss).[8] While certain members of the Davis family might have suspected Flemmi was responsible for Davis's disappearance, this suspicion does not mean that the plaintiff must be deemed to have had the requisite notice of

---

[8]On March 28, 2003 the United States moved under Fed. R. Civ. P. 12(b)(1) to dismiss the plaintiff's claims for lack of subject matter jurisdiction based on the plaintiff's alleged failure timely to comply with the FTCA's administrative claim presentment requirement. In considering the United States' motion, I may examine documents outside the pleadings because a district court "enjoys broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction." *Skwira*, 344 F.3d at 71 (quoting *Valentín v. Hospital Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001)).

In July, 2003, the defendants filed the current motions for judgment on the pleadings. In contrast to the jurisdictional requirement of the FTCA that an administrative claim be timely filed, "[t]he statute of limitations as to a *Bivens* action against individual officers is simply an affirmative defense and does not affect a court's subject matter jurisdiction." *Vega-Encarnación v. Babilnio*, 344 F.3d 37, 42 (1st Cir. 2003). Generally, a Rule 12(b)(6) or a Rule 12(c) motion is to be decided solely on the basis of the pleadings, and reference to extraneous documents converts the motion into one for summary judgment. Fed. R. Civ. P. 12(b); *Rubert-Torres v. Hospital San Pablo, Inc.*, 205 F.3d 472, 475 (1st Cir. 2000) (explaining that courts may borrow from cases interpreting Rule 12(b)(6) when determining whether attachment of or reference to other documents converts a Rule 12(c) motion into one for summary judgment). In the Consolidated Memorandum and in Plaintiff Estate of Debra Davis' Consolidated Opposition to Individual Defendants' Motions to Dismiss or for Judgment on the Pleadings on Statute of Limitations (docket no. 72), the parties incorporate by reference documents extrinsic to the pleadings. These documents were submitted in conjunction with the United States' earlier-filed motion to dismiss. I may consider those documents in ruling on the present motion under Rule 12 without converting the motion to one for summary judgment. These extrinsic documents are now part of the record. *See*, *e.g.*, *In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, 102 F.3d 1524, 1537 (9th Cir. 1996) ("[M]atters of public record, including court records in related or underlying cases which have a direct relation to the matters at issue, may be looked to when ruling on a 12(b)(6) motion to dismiss."), *rev'd on other grounds sub. nom. Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998); *Edwards v. John Hancock Mut. Life Ins. Co.*, 973 F.2d 1027, 1030 n.1 (1st Cir. 1992) (recognizing that certain items in the record and the public record may be considered in a Rule 12(b)(6) motion without converting it to a motion for summary judgment) (citation omitted)*; see also Rubert-Torres*, 205 F.3d at 476 (acknowledging that "not every attachment to a Rule 12(c) motion or opposition thereto requires conversion into a motion for summary judgment").

Davis's death. *Cutting*, 204 F. Supp. 2d at 225 ("A claim does not accrue when a person has a mere hunch, hint, suspicion, or rumor of a claim .... (quoting *Kronisch v. United States*, 150 F.3d 112, 121 (2nd Cir.1998)).[9] Further, news reports and testimony in *United States v. Salemme*, 91 F. Supp. 2d 141 (D. Mass. 1999) (the "Salemme hearings"), *rev'd in part on unrelated grounds*, 225 F.3d 78 (1st Cir. 2000), concerning the fact that Flemmi and Bulger were informants for the FBI at the time of Davis's disappearance did not necessarily render unreasonable the belief that Davis might be alive. Although the court in *Salemme* found that Flemmi and Bulger, with the cooperation - - tacit or otherwise - - of certain government actors, had murdered persons who were or might have become informants for the government, *see, e.g.*, 91 F. Supp. 2d at 208-09, Davis did not fall within that category of persons, and the *Salemme* decision does not even mention her. Perhaps if Davis had been known to have been directly involved in criminal activities with Flemmi and Bulger and/or was an informant, it would be unreasonable as a matter

---

[9]The defendants have directed my attention to the newspaper article *Mob Victim's Family Wants FBI to Fess Up*, Patriot Ledger, Mar. 1, 2003, attached at Tab C to the United States' Motion to Dismiss in this case. Cons. Mem. p. 6. The article reports,

> Now 37, Victor Davis remembers when, as a young man, he confided in a friend about his sister's disappearance. Davis told his friend that his relatives were certain that [Flemmi] had killed 26 year-old Debra Davis ... who disappeared in September 1981 after trying the break off the relationship. ... Years later, Davis'[s] *suspicions* proved true.

*Id.* (emphasis added). On a motion for judgment on the pleadings, based on the statute of limitations, I give this article little or no weight. Davis disappeared in 1981, when Victor Davis was approximately fifteen years old. A news article written in 2003 containing a second-hand report of Victor Davis's alleged statements some twenty years earlier--when he was a young as fifteen--does not provide the basis for ordering judgment on the pleadings here. Perhaps the alleged statements and the underlying reasons for those statements will be probative to the accrual question as this litigation continues. For present purposes, however, I do not consider that the news article establishes the state of mind of the plaintiff who, unlike the young Victor Davis, could have filed a claim for Davis's wrongful death in 1981 or soon thereafter.

of law for the plaintiff not to have "discovered" that Davis had been murdered. But here, where Davis had a romantic, rather than a crime-based, relationship with Flemmi, and the circumstances surrounding her disappearance were ambiguous, the plaintiff's assertion that she neither knew nor should have known, prior to October 2002, that Davis was dead is sufficient to defeat the motion for judgment on the pleadings based on the statute of limitations.[10]

Moreover, even if the plaintiff were absolutely convinced earlier, than October 2000, that Davis was dead, it would not have been unreasonable for the plaintiff to have been unaware of the constitutional injuries forming the basis of the *Bivens* claims until Davis's remains were recovered. Because the First, Fourth, and Fifth Amendments only prohibit certain conduct by government actors, the plaintiff could not have had notice of the alleged injuries to the constitutional rights of Davis and to those of the Estate before having notice that government agents had a role in depriving Davis of her life. *See Skwira,* 344 F.3d at 78.

In sum, I hold that, in the context of these motions for judgment on the pleadings, based on the contention that the plaintiff's claims are not timely, it was reasonable for the plaintiff to have been unaware of the factual bases of her *Bivens* claims until the remains of Davis were discovered in October 2002. The plaintiff has made a sufficiently persuasive argument that it

---

[10]The defendants suggest that the plaintiff's claims accrued as early as 1988 because Davis, at that time, could have been presumed dead at common law. Cons. Mem. at 5. *See Jacobs v. Town Clerk of Arlington*, 402 Mass. 824, 827 (1988). It is not self-evident that the common law presumption of death after a disappearance of seven years is sufficient to trigger the accrual of a civil claim against a party for causing the presumed death. I need not address the point further because the defendants have not developed any argument. The "argument" comprises but a single sentence and a footnote in the Consolidated Memorandum. "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work create the ossature for the argument and put flesh on its bones." *Tower v. Brown,* 326 F. 3d 290, 299 (1st Cir. 2003) (quoting *United States v. Zannino*, 895 F. 2d 1, 17 (1st Cir. 1990))

was not until this discovery did any hunch or suspicion that Davis was dead ripen into a reality. To be sure, the Salemme hearings provided the Davis family with notice of the government's alleged role in other murders committed by Flemmi and Bulger and of the FBI's efforts to prevent investigations into the gangsters' crimes.  But, without notice that Davis was dead, this information did not permit the plaintiff to discover that Davis and the Estate had suffered constitutional injuries.

> For the above-stated reasons, I deny the following motions:
>
> Motion of Defendant John M. Morris for Judgment with Prejudice on the Pleadings by Reason of Statute of Limitations (docket no. 69); and
>
> Defendant Lawrence Sarhatt's Motion for Judgment on the Pleadings Based on the Statute of Limitations (docket no. 68).
>
> For the same reasons, I will not grant judgment on the pleadings to Fitzpatrick on the

ground that the claim against him is time barred.


> SO ORDERED.

 /s/ REGINALD C. LINDSAY
United States District Judge

Dated:  March 25, 2004