UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE ESTATE OF DEBRA DAVIS, by OLGA DAVIS, in her capacity as administratrix of the Estate of Debra Davis,<br>                  Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA, et al.,<br>                  Defendants. | CIVIL ACTION NO.<br>02-11911-RCL |
| THE ESTATE OF DEBORAH HUSSEY, by MARION HUSSEY, in her capacity as administratrix of the Estate of Deborah Hussey, and MARION HUSSEY,<br>                  Plaintiffs,<br><br>v.<br><br>THE UNITED STATES OF AMERICA, et al.,<br>                  Defendants. | CIVIL ACTION NO.<br>03-10087-RCL |

MEMORANDUM AND ORDER ON MOTIONS OF DEFENDANTS
CONNOLLY, FITZPATRICK, GREENLEAF, MORRIS, RING, AND SARHATT
TO DISMISS OR FOR JUDGMENT ON THE PLEADINGS
<u>BASED ON QUALIFIED IMMUNITY</u>

LINDSAY, District Judge.

### I.    INTRODUCTION

This action arises out of the circumstances surrounding the deaths of Debra Davis ("Davis") and Deborah Hussey ("Hussey") in 1981 and 1984, respectively, allegedly at the hands of Stephen J. Flemmi and James J. Bulger. Flemmi and Bulger were alleged members of the Boston Area's Winter Hill Gang, an association reputed to have been engaged in criminal activities during the times relevant to the complaint. In their complaints, plaintiffs Olga Davis

and Marion Hussey[1] (the "plaintiffs"), allege, *inter alia*, that John J. Connolly, Jr., Robert Fitzpatrick, James Greenleaf, John M. Morris, James A. Ring, and Lawrence Sarhatt[2] (all of whom were FBI agents at the times relevant to the complaints and are hereinafter referred to as the "agents") are liable for the murders of Davis and/or Hussey because of their conduct with respect to Flemmi and Bulger, who were allegedly "top echelon" informants of the FBI. The agents allegedly allowed Flemmi and Bulger to commit crimes with impunity, including the murders of Davis and Hussey, so that the agents could boost their own careers by using the information Flemmi and Bulger provided to them to investigate, arrest, and prosecute members of La Cosa Nostra ("LCN," also popularly known as the "Mafia"), a criminal organization that was a rival to the Winter Hill Gang. The plaintiffs maintain that this conduct of the agents vis-à-vis Flemmi and Bulger is actionable under the rule stated in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) because it allegedly violated the rights of Davis and Hussey under the Fourth and Fifth amendments of the Constitution of the United States. Olga Davis also alleges that, by protecting Flemmi and Bulger from prosecution for their crimes, Connolly, Fitzpatrick, Morris, and Sarhatt conspired to violate the First and Fifth Amendment rights of the Davis Estate to access to the courts.

---

[1] Olga Davis brings this lawsuit in her capacity as administratrix of the Estate of Debra Davis (the "Davis Estate"). Marion Hussey is acting individually and as the administratrix of the Estate of Deborah Hussey.

[2] Connolly, Fitzpatrick, Morris, and Sarhatt are defendants in the *Davis* case. Connolly, Fitzpatrick, Greenleaf, Morris, and Ring are defendants in the *Hussey* case.

Before the court are the motions of all of the agents to dismiss or for judgment on the pleadings as to the *Bivens* claims in each of these cases. The motions are grounded on the assertion that the agents are entitled to qualified immunity. For the reasons set forth below, the court grants these motions.

## II.   FACTUAL ALLEGATIONS

In considering the present motions, I am required to accept as true the well-pleaded facts of the complaints and to draw in the plaintiffs' favor all reasonable inferences from those facts. *Nicolaci v. Anapol,* 387 F.3d 21, 24 (1st Cir. 2004) (setting forth standard as applicable to a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)); *see also Collier v. City of Chicopee*, 158 F.3d 601, 602 (1st Cir. 1998) (noting that motions for judgment on the pleadings under Rule 12(c) warrant the same treatment as motions to dismiss under Fed. R. Civ. P. 12(b)(6)). Neither a motion to dismiss nor a motion for judgment on the pleadings may be granted unless it appears that the plaintiffs cannot prevail on any theory supported by the facts alleged. *Nicolaci,* 357 F.3d at 24; *Collier,* 158 F.3d at 602.

For the purpose of these motions, I refer the parties to the factual allegations recited in *McIntyre v. United States*, 336 F. Supp. 2d 87, 96-100 (D. Mass. 2004), in which I granted in part and denied in part motions of Connolly, Fitzpatrick, Greenleaf, Morris, and Ring to dismiss the complaint on grounds of qualified immunity. In brief, the plaintiffs in *McIntyre* had alleged that, between 1976 and 1984, Connolly, sometimes with the participation of Morris, had alerted Flemmi and Bulger that specific persons ("confidential informants") had cooperated or might cooperate with law enforcement officers in investigating and prosecuting Flemmi and Bulger. Connolly allegedly made these disclosures knowing and intending that Flemmi and Bulger would murder the persons identified by Connolly. Following the disclosures and as a direct

3

result thereof, Flemmi and Bulger murdered each of the confidential informants.

The *Davis* and *Hussey* plaintiffs also make these allegations, but on the complaints now at issue, the murders of Davis and Hussey do not fit within the pattern of murders described above.  Specifically, it does not appear from the present complaints that Flemmi and Bulger murdered Davis and Hussey in response to a warning by Connolly that Davis and Hussey might incriminate the gangsters.

The complaints in these two cases respectively allege in brief the following.

Davis was a girlfriend of Flemmi.  *Davis* First Amended Complaint ("*Davis* Amend. Compl.") ¶ 33.  Sometime in 1981, Davis told Flemmi that she wanted to end their relationship. *Id.* ¶ 37.  Shortly thereafter, Davis disappeared and it was later revealed that she had been murdered by Flemmi and Bulger.  *Id.* ¶¶ 38, 39.  Two days after reporting Davis's disappearance to the local police, the plaintiff Olga Davis, Davis's mother, was informed that the FBI would take over the investigation into Davis's disappearance.  *Id.* ¶¶ 211-212.  Over the next year, Olga Davis met with various FBI agents approximately once a month.  Instead of asking questions regarding Davis's disappearance, however, these agents "prodd[ed]" and "fish[ed] for information Ms. Davis might know about Flemmi" to "learn whether Ms. Davis knew anything about Flemmi's involvement with the FBI."  *Id.* ¶¶ 214, 215.  The agents instructed Olga Davis "not to talk to anyone else" about Flemmi and advised her that she "ha[d] eight other kids to worry about."  *Id.* ¶ 219.

Hussey was also the girlfriend of Flemmi.  "When Deborah Hussey reached her teenage [years,] Flemmi lavished Hussey with expensive gifts" and eventually "began an illegal relationship with Deborah Hussey when she was underage."  *Hussey* Compl. ¶¶ 36, 37. Sometime in late 1984, Hussey disappeared; she too had been murdered by Bulger and Flemmi.

4

*Id.* ¶¶ 40, 42.  Hussey's remains were not recovered until January 14, 2000.  *Id.* ¶¶ 43, 305.

### III.   DISCUSSION

**A.     The Fifth Amendment Rights of Davis and Hussey**

The Fifth Amendment of the Constitution of the United States mandates that "[n]o person shall ... be deprived of life, liberty, or property without due process of law."  U.S. Const. amend. V.  The "touchstone of due process is protection of the individual against arbitrary action *of the government*."  *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998) (emphasis added) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974)).  As I pointed out in McIntyre: "The Fifth Amendment guarantees two types of due process - - procedural and substantive.  Whereas procedural due process 'provide[s] a guarantee of fair procedure in connection with any deprivation of life, liberty, or property' by the government, due process, in the substantive sense, 'protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them.'"  336 F. Supp. 2d at 107 (internal quotation marks and citations omitted).  At issue here is whether there has been a violation of the substantive due process rights of the plaintiffs' decedents.  As I explained in *McIntyre,* citizens generally do not have a right under the Fifth Amendment to be protected from the violence of private parties, except "when (1) the government has restrained a citizen's ability to care for himself; or (2) the government, through its affirmative acts, renders an individual more vulnerable to third-party violence."  *Id.* at 110.[3]

---

[3] In *McIntyre*, I held that the first exception was inapplicable because the plaintiff had not alleged that the government had restrained the ability of McIntyre to care for himself.  *See* 336 F. Supp. 2d at 113.  I concluded that the second exception was inapplicable because the right to be free from so-called state-created dangers was not clearly established at the time of the alleged misconduct.  *See id.* at 114-15.  For the same reasons, neither of these exceptions applies

There are, however, circumstances in which murder and other misconduct that is physically carried out by an ostensibly private party may be deemed to be *government action*. *See* 336 F. Supp. 2d at 115-22. I noted in *McIntyre* that almost half a century ago, the Supreme Court found that an informant's conduct was government action for purposes of determining whether a criminal defendant had been entrapped by the government. *See Sherman v. United States*, 356 U.S. 369 (1958). I also discussed and made reference to scenarios in which courts had found government action where the wrongful conduct in question had been physically carried out by a private actor. *See* 336 F. Supp. 2d at 117-21. I explained that courts have found government action where "[t]he State has so far insinuated itself into a position of interdependence with [private conduct] that it must be recognized as a joint participant in the challenged activity," *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725; a private actor conspired or "somehow reached an understanding" with a government actor to engage in conduct that would be unconstitutional if the conduct were solely that of the government actor, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970); private citizens and police officers acted "in concert, cooperation and conspiracy with each other," *Fries v. Barnes*, 618 F.2d 988, 990 (2d Cir. 1980); and police officers "in effect aided and abetted" an assault by assuring the perpetrators that the police officers would not arrest them or otherwise interfere with the assault, *Dwares v. City of New York*, 985 F.2d 94, 98-99 (2d Cir. 1993).

I concluded, that "[t]he relationship between Connolly, on the one hand and, Bulger and Flemmi, on the other, with respect to the murder of McIntyre, could be characterized by any of the nomenclature used in *Adickes*, *Fries*, [and] *Dwares*," and that the plaintiffs in that case had

---

to Davis and Hussey.

therefore sufficiently alleged that the murder of McIntyre at the hands of Bulger and Flemmi was government action. 336 F. Supp. 2d at 122. I explained that "by disclosing McIntyre's identity as an informant *and* communicating in word or in deed that the FBI would deflect efforts by other law enforcement agencies to investigate and prosecute Bulger and Flemmi for murdering McIntyre, Connolly 'aided and abetted' the homicide." *Id.* at 122.

The murders of Davis and Hussey would not constitute a violation of the Fifth Amendment rights of the two victims unless the murders could be construed as government action. In contrast to what was alleged in *McIntyre*, the plaintiffs here have not alleged, nor can it be inferred, that Connolly, Morris, or another government actor communicated to Flemmi and Bulger that either Davis or Hussey might incriminate the alleged gangsters. Moreover, the plaintiffs have not alleged that any government actor took any other affirmative step for the purpose of effectuating the murder of Davis or Hussey. Perhaps, as the plaintiffs allege, the conduct of the defendants "emboldened" the gangsters to murder Davis and Hussey, but, the utter lack of allegations of any affirmative action by government actors knowingly to bring about the murders of Davis and Hussey forecloses a conclusion that the plaintiffs have alleged that the murders of Davis and Hussey constituted government action. *See DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 203 (1989); *see also De Maria v. Washington County*, 12 F. Supp.2d 1093, 1099-100 (D. Idaho 1996) ("In every case where an officer *stands by and does nothing*, a claim could be raised that the officer's inaction emboldened the criminal. But *DeShaney* has clearly foreclosed these claims." (emphasis added)).

Because the plaintiffs have not alleged that the murders of Davis and Hussey were government action, they have not alleged a violation of a constitutional right. *See McIntyre*, 336 F. Supp. 2d at 101 ("In determining whether qualified immunity applies in a specific case, a

7

court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all....") (citation omitted). That is, the plaintiffs here have not adequately alleged that the government - - as distinguished from private parties - - violated the substantive due process rights of their decedents. Accordingly, the court grants the motions of the agents to dismiss or for judgment on the pleadings based on qualified immunity as to all claims in which the plaintiffs have alleged that the defendants violated the Fifth Amendment rights of Davis and Hussey.

**B.      Fourth Amendment Rights of Davis and Hussey**

Similarly, because the murders of Davis and Hussey were not government action, the murders could not have violated the Fourth Amendment rights of Davis and Hussey. For this reason, and for the reasons stated in *McIntyre*, *see* 336 F. Supp. 2d at 101-05, I hold that the murders of Davis and Hussey were not Fourth Amendment seizures.

**C.      Claims for Attorneys' Fees and Costs**

In count XIII of the Davis amended complaint, and in count XIV of the Hussey complaint, the plaintiffs request attorneys' fees and costs. Because these counts do not assert causes of action, I consider them simply to be prayers for relief.

**D.      Other Causes of Action Asserted by the Estate of Davis**

**1.      Count XI: Right of the Estate of Davis to Access to the Courts**

In count XI of the Davis amended complaint, Olga Davis alleges that Connolly, Fitzpatrick, Morris, and Sarhatt denied the Davis Estate of its right under the Constitution to access to the courts. Count XI of the Davis amended complaint is identical to count XII of the complaint in *McIntyre*. For the reasons set forth in *McIntyre* concerning count XII in that case,

*see* 336 F. Supp. 2d at 133-34, I hold that Connolly, Fitzpatrick, Morris, and Sarhatt are entitled to dismissal or judgment on the pleadings as to count XI of the Davis amended complaint.

    2.    **Count XII: Claim under 42 U.S.C. § 1983**

In count XII of the Davis amended complaint, the Davis Estate asserts a claim under 42 U.S.C. § 1983 against Connolly, Fitzpatrick, Morris, and Sarhatt for the violation of the Fourth and Fifth amendment rights of Davis. Section 1983 provides a right of action where a "person who [is acting], under color of any statute, ordinance, regulation, custom, or usage, *of any State* ..., subjects, or causes to be subjected, any citizen ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983 (emphasis added). Section 1983 does not provide a cause of action because the agents are alleged to have been acting "under color" of *federal* law rather than state law. *See Rogers v. Vicuna*, 264 F.3d 1, 4 (1st Cir. 2004). I therefore dismiss count XII of the Davis amended complaint as to all defendants.

### IV.    CONCLUSION

For the reasons discussed above, I hereby grant the following motions in the *Davis* case : the motion of Connolly to dismiss or for judgment on the pleadings (docket entry 65) (on the ground of qualified immunity); and the motion of Sarhatt for judgment on the pleadings (docket entry 66). I also order that, on the ground of qualified immunity, (1) counts VII through XI of the complaint be dismissed as to Fitzpatrick ; and (2) counts VII through XI of the complaint be dismissed as to Morris. Finally, I order that count XII be dismissed as to all defendants, and I deem count XIII to be a prayer for relief rather than a separate cause of action.

For the reasons discussed above, I hereby grant the following motions in the *Hussey* case: the motion of Ring to dismiss on the basis of qualified immunity (docket entry 24); the motion of

Connolly to dismiss or for judgment on the pleadings (docket entry 28) (on the ground of qualified immunity); and the motion of Fitzpatrick motion to dismiss on the basis of qualified immunity (docket entry 37). I also order that, on the ground of qualified immunity, (1) counts IX through XII of the complaint be dismissed as to Greenleaf; and (2) counts IX, X, and XII of the complaint be dismissed as to Morris. Finally, I deem count XIV to be a prayer for relief, not, in itself, a separate claim.

      SO ORDERED.

                                    /s/ REGINALD C. LINDSAY
                                    United States District Judge

Dated: March 30, 2005